**Rick L. MEANS and Fred C. Barry, Appellants,**

v.

**William Bruce CLARDY, et al., Respondents.**

**No. WD 42271.**

Missouri Court of Appeals,
Western District.

April 3, 1990.

Motion for Rehearing and/or Transfer to Supreme Court Denied May 29, 1990.

Application to Transfer Denied
July 31, 1990.

Robert L. Hyder, Jefferson City, for appellants.

Thomas D. Graham, and Curtis G. Hanrahan, Jefferson City, for respondents.

Before KENNEDY, P.J., and LOWENSTEIN and BERREY, JJ.

BERREY, Judge.

Appeal from a judgment, after retrial, in favor of defendants-respondents, Bruce Clardy, Gary Doerhoff, Joan Doerhoff, John Gross and Zurich Insurance Company in an action brought by plaintiffs-appellants, Rick Means and Fred Barry, to collect on a promissory note and to collect damages against a notary and his insurance company for the making of a false acknowledgment. Appellants present four points on appeal: (1) that the trial court erred in determining that the document in question was a contract and not a note; (2) that the trial court erred in finding for respondents Gross and Zurich Insurance Company as they are liable for a false acknowledgment; (3) that the trial court erred in finding for Bruce Clardy because he was guilty of forgery and procurement

of a false jurat; and (4) that the court should not consider the discharge of the Doerhoffs in bankruptcy.

A detailed description of the facts in the instant case is given by this court in the first appeal of this action in *Means v. Clardy*, 735 S.W.2d 6 (Mo.App.1987). Although a restatement of these facts would usually be duplicitous, because of the complicated nature of the events which triggered the litigation here, a brief description of the litigants and their roles is necessary.[1] Appellants, Rick Means and Fred Barry, owned an apartment building which they wished to sell. On July 18, 1980, they entered into a contract for deed with respondents, Joan and Gary Doerhoff. The agreement provided that the Doerhoffs would receive the apartment in exchange for 6.81 acres of land in Maries County, Missouri, and a note purportedly executed by Nancy Clardy, respondent Bruce Clardy's mother. The note had a balance due on it of $21,882 and, at that time, several of the monthly installments were in arrears.

The note in question had been given the Doerhoffs as a part of the sale of their cabinet business to Nancy Clardy. The note had been originally made for $31,000. Five thousand dollars of that amount was to be paid by October 25, 1979, with the remainder to be paid off in monthly installments of $1,250 payable in cabinets "figured at the prevailing builders price...." This arrangement was to last until October 12, 1981, when the entire balance became due and payable in cash. However, there would be no balance due at the date of maturity if all payments were made. The note bore the purported signature of Nancy Clardy, however, Nancy Clardy had not in actuality signed the note.

Appellants received a bill of sale, a note attached to it and a security agreement at the time they entered into the contract for deed with the Doerhoffs. The closing on the contract for deed was scheduled for October 12, 1981.

The evidence presented at the retrial, which included a deposition made by Bruce

---

1. For a more in-depth review of the facts see *Means v. Clardy*, 735 S.W.2d 6 (Mo.App.1987).

Clardy, clearly shows that appellants had knowledge of the falsity of the signature of Nancy Clardy long before the closing date. Bruce Clardy, in his deposition, testified that he had told the appellants at various times that the signature was not that of Nancy Clardy. He mentioned that he had informed them of the signature's falsity before the closing. Appellant Means testified that he was first informed of the falsity of the signature in spring of 1981. This was still well before the scheduled closing date of October 12, 1981.

Nancy Clardy's signature on the Bill of Sale for the Doerhoffs' cabinet business was notarized by respondent John Gross. The Bill of Sale refers to "a note and security agreement, attached...." There is some question as to whether the note was actually attached at the time of the notarization. Curiously, the note is dated October 12, 1979, one day after the Bill of Sale was dated and notarized. Respondent Gross testified that Nancy Clardy had not signed any documents in his presence but that as a favor to Bruce he notarized the Bill of Sale after Bruce told him that Nancy Clardy had signed it.

Appellants filed suit against Nancy Clardy, Bruce Clardy, Joan and Gary Doerhoff, John Gross and Zurich Insurance Company, Gross' bonding company. The case was tried and eventually appellants' claims against all of the parties were dismissed by the trial court. This decision was appealed to this court where the judgment in favor of Nancy Clardy was affirmed, but the judgments in favor of Gary and Joan Doerhoff, Bruce Clardy, John Gross and Zurich Insurance Company were reversed and remanded for further proceedings. *Means v. Clardy, supra,* 735 S.W.2d at 12.

The cause was sent back to the trial court where, on January 24, 1989, a short hearing was held in which the parties stipulated that the evidence in the first hearing together with a deposition taken from Bruce Clardy would be considered as the evidence in the instant matter. The trial court found in favor of respondents. This appeal followed.

■ Appellants first contend that the trial court erred in relieving the Doerhoffs of liability by its determination that the instrument in question was a contract and not a note as both the circuit court and this court ruled that the instrument was a note. Appellants do not cite any authority for this point nor do they relate just why this was error or how it affected them. Instead, their citations under this point concern the transferability of notes. They do not give authority which would clarify and explain their Point Relied On. This constitutes a violation of Rule 84.04 which states that, "[t]he points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, with citations of authorities thereunder." Appellants' brief on this point is unacceptable. Where irrelevant authority is cited to support a point it is as if that point was presented naked of citations and constitutes an abandonment of that point. *Cox v. Blackwell,* 661 S.W.2d 831 (Mo.App.1983); *See also Barkley v. Monsanto Company,* 717 S.W.2d 566 (Mo. App.1986). Although normally it is with great reluctance that a point is deemed abandoned, in the instant case appellants had already been given the opportunity to correct any deficiencies in their brief, and failed to do so. Appellants' first point is denied.

■ Appellants next argue that the trial court erred in finding for respondents Gross and Zurich Insurance Company. Review of the trial court's judgment is done in light of the familiar principles found in *Murphy v. Carron,* 536 S.W.2d 30 (Mo. banc 1976). The judgment will be affirmed unless it is not supported by substantial evidence, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32.

Appellants argue that because there was a false acknowledgment of the signature of Nancy Clardy, which was shown to be the procuring cause of their loss, Gross and Zurich Insurance Company are liable. To be precise, the false signature of Nancy Clardy appeared on the notarized Bill of

Sale. In *Means I* this court discussed the question of what documents were involved in this notarization. The court stated:

The notarized Bill of Sale referred to the "attached note" and plaintiffs received the Bill of Sale and note together. It is not clear that the note and the Bill of Sale were not together at the time the Bill of Sale was notarized as well. There is room for reasonable minds to differ as to whether the note and the Bill of Sale formed one notarized document and whether plaintiffs' injury in not being able to enforce the note is the reasonable and probable consequence of Mr. Gross' official misconduct.

*Means v. Clardy, supra,* 735 S.W.2d at 12.

The trial court held it was reasonable to conclude that the note was not attached to the Bill of Sale. In support of this conclusion the trial court points out the discrepancy in the dates. The Bill of Sale was dated October 11, 1979. There was no indication in the evidence that notarization occurred on any other date. The note, however, bore the date of October 12, 1979, one day later than the date of the Bill of Sale. A review of the evidence supports the conclusion reached by the trial court. Appellants did not prove that the note was notarized, only that the Bill of Sale was notarized.

Even assuming *arguendo* that the note and Bill of Sale formed one notarized document, the appellants still could not recover under the facts of the instant case. Section 486.355, RSMo 1986, spells out exactly when a notary and his surety are liable for damages. It reads: "A notary public and the surety or sureties on his bond are liable to the persons involved for all damages *proximately caused* by the notary's official misconduct." § 486.355, RSMo 1986 (emphasis added). The trial court correctly found that "[w]hether or not Means and Barry relied on *any* notarization of *any* document, that reliance could not have been the proximate cause of their loss."

Bruce Clardy warned appellants that the signature was not that of Nancy Clardy. In fact, in his deposition, he states "that before they ever contracted, put together any transaction with Gary Doerhoff, they

were told various different times that that was not Nancy Clardy's signature." Appellants relied on what Gary Doerhoff told them. Doerhoff told them not to contact the Clardys because "he didn't want to throw a monkey wrench in the deal."

Appellants themselves had knowledge of the falsity of the Nancy Clardy signature prior to the closing date on the deed, October 12, 1981. Appellant Means' attorney wrote to Mrs. Clardy on May 26, 1981. Her answer, wherein she denied making any instrument was contained in a letter dated June 1, 1981, to Means' attorney. Means himself testified that he had learned of this "sometime in the summer of '81." There was never any attempt made to set the deed aside, an equitable remedy which would have been logical to utilize under the facts of this case. Appellants' Point II is denied.

■ Appellants' Point III contends that the trial court erred in entering judgment for Bruce Clardy because he was guilty of forgery and procurement of a false jurat. Appellant quotes that part of the decision in *Means I* where the court states: "Plaintiffs, as assignees of the Doerhoffs, would stand in the same position as the Doerhoffs as regards any recovery which might be obtained from Bruce Clardy on a theory of fraud or breach of warranty of authority." *Means v. Clardy, supra,* 735 S.W.2d at 11. The trial court found that the note was akin to a contract for services payable in cabinets. The trial court stated: "If, on the other hand, the note was assignable, as against Bruce, plaintiffs have only the right, under its terms, to receive cabinets in lieu of cash. Here, however, they seek cash rather than cabinets."

This court, in *Means I,* stressed the same problem with the note that the trial court found upon retrial. There, this court clearly pointed out that, "[t]he Clardy note was to be paid in *cabinets.*" *Id.* at 10. Bruce Clardy's fraud notwithstanding, appellants can only recover to the extent the Doerhoffs' would recover. Appellants' Point III is denied.

Appellants' final point contends that the court should not consider the discharge of

the Doerhoffs in bankruptcy in the absence of evidence that the obligation was, in fact, included in the bankruptcy. Once again, it is difficult to see just what appellants are trying to appeal in this point. Appellants' argument states, "[t]his court permitted counsel for the Doerhoffs to withdraw on September 25, 1989 and the burden is on the Doerhoffs to convince this court of that fact before consideration can be given to a discharge in bankruptcy." Apparently, appellants are asking this court to review the bankruptcy proceedings. The trial court did not mention the Doerhoffs' bankruptcy in its judgment, and it is the judgment of the trial court that is under review. Appellants' Point IV is denied.

The judgment of the trial court is affirmed.

All concur.